Filed 9/5/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENZIL FARRIAN ALLISON,<br><br>    Defendant and Appellant. | No. A153527<br><br>(Contra Costa County Super. Ct.<br>  Nos. 5-180579-7, 5-021253-0,<br>   5-971130-0;<br>  Alameda County Super. Ct.<br>  No. 135112) |

Defendant Denzil Farrian Allison was convicted of a series of violent felonies in three different cases, for which he received a 51-year aggregate sentence in 2005 under a plea agreement. Upon the grant of a petition for a writ of habeas corpus in 2017, he was resentenced to an aggregate sentence of 45 years and eight months. He argues we should vacate two consecutive one-year sentences imposed as part of this resentencing because they are unlawful under California Rules of Court, rule 4.452, remand for resentencing, and also remand so the court can decide whether to strike his four firearm enhancements.

The People argue against Allison's appellate claims on a variety of grounds, including that the habeas order is void; that Allison needs, and has failed to obtain, a certificate of probable cause to raise his appellate claims; and that remand regarding the enhancement sentences would be futile.

We conclude the habeas order is not void, Allison may raise his rule 4.452 claim without a certificate of probable cause and the two sentences he challenges must be vacated as unlawful. We agree with the People that remand regarding the firearm enhancement sentences would be futile and affirm those sentences.

1

## BACKGROUND

This appeal involves Allison's 2017 resentencing in three different cases, which we shall refer to as Cases A, B and C. Each case was the subject of a negotiated disposition in which Allison pleaded no contest to certain charges. He was initially sentenced in 2000 in Case A; sentenced later in 2000 in Case B to an aggregate term for both Case A and Case B; and sentenced in 2005 in Case C to an aggregate term that included sentences for Case C *and* resentences for Case A and Case B. In 2017, after the superior court granted Allison's petition for a writ of habeas corpus, Allison was resentenced in all three cases.

### A. The Original Sentences in Cases A, B and C

Specifically, in 2000, in Case A, case number 135112 in Alameda County Superior Court, Allison pleaded no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and admitted the truth of two enhancement allegations—his personal use of a firearm (§ 12022.5) and his sufferance of a prior prison term (§ 667.5, subd. (b)). The court found him guilty of these charges and sentenced him to a total of 17 years in prison. This consisted of 16 years for voluntary manslaughter and 1 year for the prior prison term enhancement under section 667.5, subdivision (b).

Later in 2000, in Case B, case number 971130-0 in Contra Costa County Superior Court, Allison pleaded no contest to three counts of assault with a firearm (§ 245, subd. (a)(2)). The court found him guilty of these charges and sentenced him to an aggregate prison term of 18 years for Case A and Case B. This consisted of the 17-year term in Case A and a consecutive 1-year term in one of the three assault with a firearm convictions in Case B. The court imposed concurrent one-year sentences for the other two assault with a firearm convictions.

In 2005, in Case C, case number 5-021253-0 in Contra Costa County Superior Court, Allison pleaded no contest to three counts of voluntary manslaughter (§ 192, subd. (a)), admitted the truth of the personal use of a firearm enhancement allegations

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2

attached to each of these three counts (§ 12022.5, subd. (a)) and pleaded no contest to two counts of attempted second degree murder (§§ 187, 664, subd. (a)). His pleas were part of an agreement that, as his counsel stated at the time, included the parties' "hope to come up with a combined sentence of 51 years on the three cases." His counsel, with the approval of the prosecutor, then made a "suggestion" about how the court might reach this aggregate sentence.

The trial court in Case C found Allison guilty of the charges he pled to in Case C and sentenced him to an aggregate prison term of 51 years for Cases A, B and C. This aggregate sentence included concurrent three-year terms for each of the three assault with a firearm convictions in Case B and consecutive upper terms for two of the personal use of a firearm enhancements in Case C. It also included a concurrent one-year term (rather than the previous consecutive one-year term) for Case A's prior prison term enhancement under section 667.5, subdivision (b).

**B. Allison's 2017 Habeas Petition**

Twelve years later, in 2017, Allison, appearing in propria persona, filed a petition for writ of habeas corpus in Contra Costa County Superior Court. He alleged the aggregate 51-year sentence imposed in 2005 was unauthorized by law in two respects. First, the Case C court imposed an upper term rather than a middle term sentence for his Case A voluntary manslaughter conviction without finding any aggravating circumstances. Second, the court violated section 1170.1, subdivision (a) by imposing (1) middle term three-year sentences rather than one-third of these middle terms, i.e., one year, as subordinate sentences for the Case B assault with a firearm convictions and (2) upper term 10-year sentences rather than one-third of each these terms (as subordinate sentences), or three years and four months, for two of the Case C personal use of a firearm enhancements. Allison requested the court resentence him to a lawful aggregate prison term of 34 years.

Among the documents Allison submitted to the superior court in support of his petition was a November 20, 2015 letter from the California Department of Corrections and Rehabilitation (CDCR) to the Case C court stating that Allison's abstract of judgment

3

could be in error or incomplete for multiple reasons.  This included, regarding the Case C 10-year firearm enhancement sentences, that section 1170.1 required imposition of one-third of the term imposed for enhancements attached to subordinate offenses.

In their return, the People acknowledged that under section 1170.1 any consecutive subordinate term and related enhancement must consist of one-third of the middle term for the offense or enhancement.  They further acknowledged that an unauthorized sentence may be corrected at any time, citing *In re Birdwell*  (1996) 50 Cal.App.4th 926, 931.  They contended that nonetheless, "because the sentence was agreed upon in a plea bargain between the People and the petitioner, the People are entitled to the benefit of the plea bargain, should the petitioner be resentenced," but they did not explain this contention or state what it entailed.

In his reply, Allison, now represented by counsel, focused on the ramifications of section 1170.1 to the lawfulness of his 2005 sentencing.  He contended the court should impose a sentence of 26 years and 6 months.

The superior court ruled in the habeas proceeding (habeas order) that Allison's 51-year sentence was unauthorized under section 1170.1 and that the People could not benefit from an illegal sentence.  It remanded the matter to the Case C court for resentencing "in accordance with . . . Section 1170.1" and with the authority to reconsider its prior sentencing decisions in order to impose a term equaling Allison's previous sentence.

### C.  The 2017 Resentencing

The Case C court, with the same judge presiding as in 2005, held a resentencing hearing in November 2017.  The parties submitted briefs and argued at the hearing about the lawful aggregate prison term that came closest to 51 years.

The People stated there was no lawful way to arrive at a 51-year aggregate sentence and at first asserted a sentence of 39 years was the maximum lawful sentence possible.  This included consecutive one-year sentences for each of the Case B assault with a firearm convictions (one third of the midterm under § 245, subd. (a)(2)).

4

In a second brief filed soon after the first, the People argued the closest lawful sentence to 51 years was actually 45 years and 8 months, including consecutive one-year sentences for each of the three Case B assault with a firearm convictions. The People argued the court was not required by any previous discretionary sentencing decisions to resentence Allison to concurrent sentences for these three convictions. The People also argued that in 2005 the court erred by imposing a concurrent one-year term for the Case A prior prison term enhancement under section 667.5, subdivision (b). They asserted the 2017 resentencing court should either impose a consecutive sentence or strike this enhancement and included a consecutive one-year term for this enhancement in their proposed sentence.

In his resentencing brief, Allison argued the court should resentence him to 31 years and 4 months. This included concurrent one-year sentences for the three Case B assault with a firearm convictions. At the resentencing hearing, his counsel also contended that California Rules of Court, rule 4.452 (rule 4.452) prohibited the court from changing concurrent terms to consecutive terms for sentences imposed by a previous court.[2] The People argued Allison had waived this claim in 2005 and that the 2017 resentencing court could undo any of its previous discretionary sentencing decisions in order to resentence Allison to a lawful term that was as close to the originally agreed-to 51-year term as possible.

The 2017 resentencing court questioned whether rule 4.452 applied to a plea agreement and concluded it could reconsider its previous sentencing choices to try to

_____

[2] Rule 4.452(a) states, "If a determinate sentence is imposed under section 1170.1 (a) consecutive to one or more determinate sentences imposed previously in the same court or in other courts, the court in the current case must pronounce a single aggregate term, as defined in section 1170.1 (a), stating the result of combining the previous and current sentences." In those situations, "[d]iscretionary decisions of the judges in the previous cases may not be changed by the judge in the current case. Such decisions include . . . making counts in prior cases concurrent with or consecutive to each other . . . . However, if a previously designated principal term becomes a subordinate term after the resentencing, the subordinate term will be limited to one-third the middle base term as provided in section 1170.1 (a)." (Rule 4.452(a)(3).)

achieve the sentencing goal of the 2005 plea agreement. Changing sentences in all three cases, it resentenced Allison to an aggregate term of 45 years and 8 months for Cases A, B and C (2017 resentencing orders). This included consecutive one-year sentences for the Case B assault with a firearm convictions and a consecutive one-year term for the Case A prior prison term enhancement under section 667.5, subdivision (b).

Allison timely filed notices of appeal from the resentencing orders for Case B and Case C.[3] He did not file a notice of appeal from the court's resentencing in Case A. However, in an application to this court that we have taken under submission, he argues we should construe the notices he filed as including an appeal from that case also. As we will discuss in Discussion part III *post*, we have no need to decide this issue because, assuming for the sake of argument that he has effectively appealed from Case A, his appellate claim relating to that case nonetheless lacks merit.

Allison also filed a notice of appeal from the superior court's 2017 order granting most of his habeas corpus petition. The People urge us to dismiss that appeal because Allison cannot appeal from any denial of his habeas petition. We agree and dismiss it. (See Pen. Code, § 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on other grounds in *In re Avila* (2004) 33 Cal.4th 254, 260.) In any event, Allison only refers to the court's habeas order to support his argument that we should construe his appeals as including one from Case A.

---

[3] Allison had 60 calendar days to file these notices from the resentencing orders, issued on November 22, 2017. (See Cal. Rules of Court, rule 8.308(a).) He filed 61 days after issuance, on January 22, 2018. Still, as the People concede, he timely filed. His last calendar day to file was January 21, 2018, which we note was a Sunday. (Evid. Code, §§ 452, subd. (h), 459.) Therefore, his last filing day was the next business day, Monday, January 22. (See Code Civ. Proc., § 12.)

## DISCUSSION

Allison argues we must (1) vacate the consecutive terms imposed in 2017 for two of the three Case B assault with a firearm convictions as unlawful, (2) vacate the Case A and Case C firearm enhancement sentences and remand to the trial court to determine whether to exercise its discretion to strike these sentences under Senate Bill No. 620 and (3) correct certain clerical errors in the court's November 22, 2017 minute order.

The People argue we should not reach the merits of the first two issues (they do not address the third) for two reasons. First, we should reverse the superior court's 2017 order granting Allison's habeas petition and then reimpose the 51-year aggregate sentence because Allison's sole remedy was to appeal in 2005 from that sentence after obtaining a certificate of probable cause, rendering the habeas order void as unlawful; and second, Allison has forfeited each of the two issues he raises by failing to obtain a certificate of probable cause and is estopped from appealing for a better sentence than that to which he stipulated in 2005.

As for the merits, the People agree the consecutive sentences for two of the Case B assault with a firearm convictions were unlawful, but argue remand of the court's firearm enhancement sentences would be futile and, therefore, is unnecessary.

We conclude the habeas order is not void, including (1) because Allison was entitled to petition the *superior court* for a writ of habeas corpus without first obtaining a certificate of probable cause, (2) the superior court could change an unlawful sentence at any time and (3) the court could reconsider the sentence upon notice from the CDCR of its possible illegality.

We also conclude that Allison can on appeal challenge as unlawful the 2017 resentencing court's imposition of consecutive sentences for two of the Case B assault with a firearm convictions without first obtaining a certificate of probable cause. The statements and conduct of the parties indicate that Allison's challenge is one contemplated and reserved by the parties' plea agreement, since the parties agreed that the court could impose an aggregate sentence as close to 51 years as lawfully possible

7

rather than a 51-year sentence whether lawful or not. We further conclude that these consecutive sentences must be vacated as unlawful.

Given our rulings, we need not order corrections in the November 2017 minute order. We also do not remand to the trial court to consider whether to strike the firearm enhancements under Senate Bill No. 620 because it clearly is futile to do so.

We turn to each of these issues now.

## I.

### *The Habeas Order Is Not Void.*

Contrary to the People's assertion, the 2017 habeas order is not void.

According to the People, the superior court should have denied Allison's 2017 habeas petition because his "sole remedy" for any 2005 sentencing error was to obtain a certificate of probable cause and appeal the 2005 judgment. They contend Allison entered into a plea agreement that included a stipulated aggregate 51-year sentence for Cases A, B and C, the Case C court imposed this sentence and Allison did not appeal from it or seek a certificate of probable cause. Further, they argue, any challenge to a negotiated sentence is a challenge to the validity of the plea agreement itself; the failure to obtain a certificate of probable cause following a no contest plea generally forecloses habeas relief; and the certificate of probable cause requirement is a matter of fundamental jurisdiction. Therefore, "the superior court lacked jurisdiction to consider [Allison's] challenges to his stipulated sentence on habeas." They urge us to conclude the habeas order is void because " 'an act beyond the court's jurisdiction in the fundamental sense is null and void' *ab initio*" (*People v. Lara* (2010) 48 Cal.4th 216, 225) and " 'vulnerable to direct or collateral attack at any time.' " (*People v. American Contractors Indemnity Co*. (2004) 33 Cal.4th 653, 660.)

Allison replies that, although generally a habeas petition should not be granted for an issue that could have been but was not raised on appeal, a habeas challenge to an unlawful sentence is an exception to this rule; a plea agreement cannot authorize a trial court to exercise a power it does not have; and the People's failure to appeal from the 2017 habeas order makes that decision final and res judicata.

8

We conclude the superior court was authorized to reconsider unlawful aspects of Allison's sentence under these circumstances for multiple reasons.  One reason, as we will discuss further in subpart II.A *post*, concerns the specific terms of the parties' plea agreement.

Further, even if a certificate of probable cause would have been required for Allison to raise his 1170.1 sentencing issues on appeal, he did not need to obtain a certificate to seek habeas relief in the superior court for three reasons.  First, the certificate of probable cause provisions only require a certificate to *appeal* from an order affecting the validity of the plea agreement.  Section 1237.5 states, "No *appeal* shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere" except where the defendant has obtained a certificate of probable cause from the trial court.  (Italics added.)  California Rules of Court, rule 8.304 states that "*to appeal* from a superior court judgment after a plea of guilty or nolo contendere" a defendant must obtain a certificate of probable cause subject to certain exceptions, including that the appeal is on "[g]rounds that arose after entry of the plea and do not affect the plea's validity."  (Cal. Rules of Court, rule 8.304(b)(1), (4)(B); see *People v. Cuevas* (2008) 44 Cal.4th 374, 379.)  The certificate functions as a notice of appeal in cases involving negotiated dispositions, which notices are of a "fundamental jurisdictional nature."  (*In re Chavez* (2003) 30 Cal.4th 643, 652, 655.)

Moreover, the purposes of the certificate requirement relate to appellate litigation only.  The requirement is "intended to promote judicial economy by screening out wholly frivolous *appeals* prior to the commitment of economic and legal resources to such matters" and, as "applicable to such an *appeal*," it is intended to promote finality of judgment.  (*In re Chavez*, *supra*, 30 Cal.4th at pp. 653–654, italics added.)  These purposes do not address a habeas petition to the superior court.  Since Allison did not raise the challenge to his sentencing by way of appeal or even seek habeas relief in this court but instead filed a habeas petition in the *superior* court, the certificate requirement does not apply.

9

The People point out that our Supreme Court has stated that "[n]ormally habeas corpus will not lie where the remedy of appeal exists." (*In re Brown* (1973) 9 Cal.3d 679, 682; see also *In re Chavez*, *supra*, 30 Cal.4th at p. 651 [defendant challenging a plea agreement on the ground of ineffective assistance of counsel cannot circumvent section 1237.5 by seeking a writ of habeas corpus in appellate court].) However, the cases the People cite involve habeas petitions to the appellate court rather than the superior court. The cases do not address whether a petitioner can seek a writ from the superior court without previously obtaining a certificate of probable cause in his case. The People do not cite a case, and we are not aware of one, that has held that a failure to obtain a certificate of probable cause prohibits a defendant from pursuing habeas relief in the *superior court*. We see no reason why that would be the case.

Second, Allison contended in his habeas petition that the Case C court imposed an unlawful sentence in 2005. It is well established that "[a] plea bargain that purports to authorize the court to exercise a power it does not have is unlawful and may not be enforced." (*In re Daniel M. Williams* (2000) 83 Cal.App.4th 936, 944 (*Williams*).) While there is disagreement between appellate courts as to whether such a sentence can be corrected *on appeal* in the absence of a certificate of probable cause, there is no such disagreement about the rule that an unlawful sentence can be corrected *by the trial court* at any time. (See, e.g., *People v. Corban* (2006) 138 Cal.App.4th 1111, 1115–1117 [noting trial court can correct such a sentence at any time, discussing dispute among the appellate courts about appellate relief and concluding no certificate was required because appeal challenged only legality of sentence and not validity of plea].)

Third, the superior court was statutorily authorized to reconsider Allison's sentence upon the CDCR's notification of its possible illegality. In *Williams*, *supra*, 83 Cal.App.4th 936, Williams appealed from the trial court's striking of credits awarded to him as a material part of his plea agreement after the court received a letter from the Department of Corrections stating Williams was not entitled to them. (*Id*. at pp. 940–941.) The appellate court explained that section 1170, subdivision (d) allowed the trial court at any time, upon the recommendation of the Director of Corrections, to recall a

10

previous determinate sentence and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence was no greater than the initial sentence.[4] (*Williams*, at p. 945.)  The court rejected Williams's argument that it had no jurisdiction to resentence him based on section 1170.  The court explained, "[T]he trial court cannot approve a plea bargain that calls for an unlawful sentence. . . . [W]e see no reason why the [Department of Corrections] cannot bring such error to the attention of the trial court.  The fact that the loss of good time/work time presentence credit could result in longer incarceration of petitioner does not overcome the fundamental requirement that the trial court can only approve a plea bargain that provides lawful terms.  Therefore, the trial court is authorized to strike the credit . . . ."  (*Williams*, at pp. 945–946.)  The *Williams* court's reasoning applies equally here.

For these reasons, we conclude the superior court had the legal authority to grant Allison's habeas petition.  The People's contention to the contrary lacks merit.

## II.

### *Allison's Assault with a Firearm Consecutive Sentences Must Be Vacated as Unlawful.*

Allison next argues that the 2017 resentencing court had no legal authority to impose consecutive sentences for two of his Case B assault with a firearm convictions (counts eight and nine) because under rule 4.452 it was prohibited from changing the Case B court's decision in 2000 to impose concurrent sentences for these convictions. The People agree but nonetheless argue we should dismiss Allison's claim for lack of fundamental jurisdiction because he challenges a sentence he stipulated to in the 2005 plea agreement without having first obtained a certificate of probable cause and because he is estopped from seeking to better this stipulated sentence on appeal.  Allison argues the People's arguments lack merit because he did not stipulate to his 2017 sentence.

We will address the merits of Allison's claim because he does not challenge the validity of the parties' plea agreement.  Whether or not the parties stipulated to a specific term in 2005, they indicated by their statements and conduct that any sentence imposed

---

[4]  This provision remained the same in substance in 2017 (Stats. 2017, ch. 287, § 1) and remains the same in substance today.  (§ 1170, subd. (d).)

had to be lawful. Regarding the merits of Allison's claim, for reasons we shall discuss we conclude the 2017 resentencing court acted unlawfully under rule 4.452 when it imposed consecutive rather than concurrent sentences for two of the Case B assault with a firearm convictions.

### A. Allison Can Challenge the Court's 2017 Imposition of Two Consecutive Assault with a Firearm Sentences as Unlawful.

Allison can raise his rule 4.452 claim without first obtaining a certificate of probable cause and is not estopped from raising this claim.

Generally, when a specific sentence is an "integral part of the plea agreement," a defendant may not challenge it on appeal without first obtaining a certificate of probable cause. (*People v. Panizzon* (1996) 13 Cal.4th 68, 76–77, 78; *People v. Hester* (2000) 22 Cal.4th 290, 295 [plea deal for specified sentence constituted implicit waiver of defendant's right to contend sentence violated section 654].) This is because a specified sentence in a plea agreement "normally implies a mutual understanding of the defendant and the prosecutor that the specified [sentence] is one that the trial court may lawfully impose." (*People v. Shelton* (2006) 37 Cal.4th 759, 768 (*Shelton*).) Because "defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process," they "are estopped from complaining of sentences to which they agreed." (*Hester*, at p. 295.)

On the other hand, a probable cause certificate is not required to challenge a trial court's exercise of a discretion that the parties reserved to it under their plea agreement. (*People v. Buttram* (2003) 30 Cal.4th 773, 785–786.) "[W]hen the claim on appeal is merely that the trial court abused the discretion the parties intended it to exercise, there is, in substance, no attack on a sentence that was 'part of [the] plea bargain.' [Citation.] Instead, the appellate challenge is one contemplated, and reserved, by the agreement itself." (*Id*. at pp. 785–786.)

Thus, whether Allison can pursue his rule 4.452 claim without having first obtained a certificate of probable cause depends upon the nature of the sentence agreed to by the parties in 2005. They do not cite, and we have not found, a case involving

12

circumstances analogous to those before us.  Therefore, as our Supreme Court has instructed, we turn to rules of contract interpretation.  "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. . . .  'If contractual language is clear and explicit, it governs.  (Civ. Code, § 1638.)  On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."  (*Id.*, Civ. Code, § 1649; [citation].)'  [Citation.]  'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.  (Civ. Code, §§ 1635–1656; Code Civ. Proc., §§ 1859–1861, 1864; [citations].)' "  (*Shelton*, *supra*, 37 Cal.4th at p. 767.) " 'The acts of the parties under the contract afford one of the most reliable means of arriving at their intention; and, while not conclusive, the construction thus given to a contract by the parties before any controversy has arisen as to its meaning will, when reasonable, be adopted and enforced by the courts.' "  (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 753.)

The People's argument that Allison cannot pursue his rule 4.452 claim is predicated on the contention that the parties originally stipulated to a 51-year sentence that they mutually understood the trial court could lawfully impose.  However, the record does not unambiguously indicate this was the case.  Allison apparently executed a plea form in 2005 regarding the parties' agreement but it is not in the record.  The record does contain a plea form he had previously executed and withdrawn, which contains a stipulated 33-year sentence for the Case C convictions.  At the 2005 sentencing hearing, counsel represented that Allison had replaced this plea form (with the one not contained in the record) to include Allison's resentencing in Cases A and B and that the form did not change any of Allison's pleas.  Neither representation indicates whether this new form contained a stipulated sentence of 51 years.

Furthermore, at the 2005 (Case C) sentencing hearing, Allison's counsel spoke in terms suggesting that the parties did *not* stipulate to this specific 51-year aggregate term with the mutual understanding that it was lawful. Counsel stated only that the parties' "*hope* to come up with a combined sentence of 51 years on the three cases" and that he had a "*suggestion*" about how the court might reach this aggregate sentence. (Italics added.) These statements suggest the parties intended the Case C court would have the discretion to impose specific sentences that came as close to 51 years *as lawfully possible*.

Given this ambiguity, we look to the parties' conduct to determine the nature of their 2005 plea agreement. (*Shelton*, *supra*, 37 Cal.4th at p. 767; *Crestview Cemetery Assn. v. Dieden*, *supra*, 54 Cal.2d at p. 753.) Their conduct in 2017 indicates they intended the 2017 resentencing court would exercise its discretion to impose particular sentences that were lawful. Allison, of course, argued in 2017 that there was no binding stipulated sentence. But the People also repeatedly argued that the 2017 resentencing court should impose the maximum *lawful* sentence, without limitation. Indeed, in their 2017 resentencing brief, the People went beyond the scope of the habeas order (which addressed only unlawful sentences under section 1170.1) when they argued that in 2005 the Case C court also erred by imposing a concurrent one-year term for the Case A prior prison term enhancement under section 667.5, subdivision (b), and that the 2017 resentencing court should either impose a consecutive sentence or strike this enhancement. Furthermore, when Allison argued that the 2017 resentencing court could not impose consecutive sentences for two of his assault with a firearm convictions under rule 4.452, the People did *not* assert that Allison's argument challenged the validity of the parties' plea agreement. Indeed, there is no record that the People asserted in the habeas proceeding that Allison's section 1170.1 contention challenged the validity of the parties' plea agreement either; in their return they argued only that "because the sentence was agreed upon in a plea bargain between the People and the petitioner, the People are entitled to the benefit of the plea bargain, should the petitioner be resentenced," and they did not explain this contention or state what it entailed.

14

We conclude Allison's counsel's statements at the 2005 hearing and the parties' subsequent conduct in 2017 establish that the parties intended in 2005 to give the Case C court the discretion to impose particular, lawful sentences of up to but no greater than 51 years. The parties essentially asked the court to impose an aggregate sentence that was as close to 51 years as was lawfully possible and left it to the court's discretion to determine what it could lawfully do. These circumstances are similar to those confronted by our Supreme Court in *People v. Buttram*, *supra*, 30 Cal.4th 773, in which the parties agreed to a maximum sentence. The court concluded Buttram did not need a certificate of probable cause to challenge the sentence imposed because, "[b]y agreeing only to a maximum sentence, the parties leave unresolved between themselves the appropriate sentence within the maximum. That issue is left to the normal sentencing discretion of the trial court, to be exercised in a separate proceeding." (*Id*. at pp. 785–786.) Allison's rule 4.452 challenge is on the ground of unlawfulness and, therefore, is one contemplated and reserved by the parties' 2005 plea agreement. He was not required to obtain a certificate of probable cause to raise his rule 4.452 claim here. (See *Buttram*, at p. 786.)

## B. The 2017 Resentencing Court's Imposition of Consecutive Sentences for Two Case B Assault with a Firearm Convictions was Unlawful.

Under rule 4.452(a)(1), a sentencing court in a subsequent case is required to "pronounce a single aggregate term, as defined in section 1170.1(a), stating the result of combining the previous and current sentences."[5] Rule 4.452(a)(3) states, "Discretionary

---

[5] Section 1170.1, subdivision (a) states in relevant part, "when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive

15

decisions of the judges in the previous cases may not be changed by the judge in the current case. Such decisions include . . . making counts in prior cases concurrent with or consecutive to each other . . . ."

In 2000, in Case B, Allison was convicted of assault with a firearm as charged in counts seven, eight and nine. The Case B court imposed a consecutive one-year sentence for count seven and concurrent one-year sentences for counts eight and nine. In 2005, the Case C court, as a part of its imposition of an aggregate sentence of 51 years for cases A, B and C, imposed concurrent three-year sentences for all three of these Case B convictions, changing the consecutive sentence for count seven to a concurrent one (a violation of rule 4.452(a)(3) in Allison's favor that neither Allison nor the People challenged). In 2017, the court resentenced Allison to three consecutive one-year sentences for these Case B convictions. As Allison contends, under rule 4.452(a)(3) the 2017 resentencing court lacked the legal authority to change the concurrent sentences imposed by the previous court—in this case, the 2000 Case B court—for counts eight and nine to consecutive sentences, regardless of whether the 2017 resentencing court could reconsider the sentencing decisions it had previously made in 2005. We must vacate these two consecutive sentences and remand to the trial court for resentencing consistent with this opinion.

## III.

### *Allison's Senate Bill No. 620 Claim Lacks Merit.*

The 2017 resentencing included sentences for the Case A firearm enhancement and three Case C firearm enhancements, all found to be true against Allison under section 12022.5. The 2017 resentencing court imposed a 10-year sentence for the Case C enhancement, which was attached to what the court designated as the principal term, and one-third of the upper term of 10 years for the other three enhancements. Thus, 20 years of the court's 45 year and eight month aggregate sentence were for these enhancements.

term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

16

At the time, the court could not strike these enhancements under section 12022.5. (Former § 12022.5, subd. (c), Stats. 2011, ch. 39, § 60.)

On January 1, 2018, Senate Bill No. 620 went into effect, giving trial courts the discretion to strike or dismiss prior findings under firearm-related enhancements. (Stats. 2017, ch. 682, § 1, subd. (c).) Specifically, section 12022.5, subd (c) states, "The court may in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

Defendant argues that section 12022.5, subdivision (c), as amended by Senate Bill No. 620, applies retroactively to his case and that we should remand this matter to the resentencing court to determine whether to strike the four firearm enhancements. The People concede that the amended section 12022.5 subdivision (c) in general applies retroactively. We agree. (See *People v. Zamora* (2019) 35 Cal.App.5th 200 [amended § 12022.5, subd. (c) applies retroactively to all cases not final when it took effect].)

However, the People oppose remand for several reasons. Along with their argument that the habeas order is void as unlawful, which we have rejected *ante*, they argue we should not remand because (1) Allison also was required to obtain a certificate of probable cause in order to raise this claim on appeal; (2) he cannot raise a claim regarding Case A because he failed to file a notice of appeal from the court's 2017 resentencing order in that case; and (3) remand is unnecessary here because the record clearly shows the 2017 resentencing court would not have exercised discretion, if the court had it at the time, to strike these firearm enhancements.

We need not address all three arguments because, even assuming for the sake of argument that Allison has properly appealed from the court's Case A resentencing order and does not need a certificate of probable cause to raise his Senate Bill No. 620 claim, we agree with the People's third argument. Remand is unnecessary if there is a clear indication that the resentencing court will not exercise its discretion to strike the firearm enhancements. (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 423 [remand under

17

Senate Bill No. 620 required if this standard is not met].) Typically, we remand to the trial court to make its own determination, but we will not remand here because it is clear that doing so would be a futile act under the unique circumstances of this case. Allison was convicted of a series of serious and violent felonies in three different cases. In 2005, he was sentenced to an aggregate sentence of 51 years in prison. Sentencing was reopened in 2017 only because a part of that 51-year sentence was unlawful. At no time did the 2017 resentencing court consider whether any aspect of Allison's sentencing should be reduced other than because of unlawfulness. To the contrary, during resentencing, the parties and the court focused repeatedly and entirely on determining the *maximum* lawful aggregate sentence the court could impose in order to come as close to 51 years as possible. In setting his sentence at 45 years and 8 months, the court also imposed the maximum lawful sentences for all of the firearm enhancements. (§ 12022.5, (a) [designating the range of terms as 3, 4 or 10 years].)

Allison argues that we should remand based on two cases that involved stipulated sentences. Neither case supports his position. In the first, *People v. Hurlic* (2018) 25 Cal.App.5th 50, the court's entire focus was on whether a certificate of probable cause was needed to raise a Senate Bill No. 620 claim; the court did not publish the portion of its opinion discussing its reasons for rejecting an argument that remand would be futile. (*Hurlic*, at pp. 54–59.) *People v. Baldivia* (2018) 28 Cal.App.5th 1071 barely touched on a relevant issue. Baldivia had been sentenced under a plea agreement in adult court for crimes he committed at the age of 17. The appellate court considered whether he was entitled to a juvenile fitness hearing under a new law, Proposition 57, to determine if his case should be resolved in juvenile or adult court, and whether he needed a certificate of probable cause to raise both this and a Senate Bill No. 620 issue on appeal. (*Baldivia*, at pp. 1074–1079.) Although at the end of the last paragraph of its opinion the appellate court ordered that, if Baldivia's case was resolved in adult court, that court should consider whether to strike the firearm enhancements, the court provided no analysis or explanation for this part of its decision. (*Id*. at pp. 1079–1080.)

18

Under the circumstances, it is clear the 2017 resentencing court would not strike Allison's firearm enhancements if we remanded. Therefore, we affirm these enhancement sentences.

## IV.

### *The 2017 Resentencing Court Should Accurately State Its Sentences in Its Minute Order and Amended Abstract of Judgment.*

Allison correctly points out that the 2017 resentencing court made clerical errors in its November 22, 2017 minute order memorializing its sentencing decisions.

In its minute order, the court first listed the Case C sentences under the correct case number, but began each count with the letter "A," thereby suggesting they were in Case A, and compounded this error by including the prior prison term sentence in the list when it should have been under the case number for Case A. Next, the court listed two of the sentences for Case A under the case number for Case B and began the relevant count with the letter "B," thereby suggesting it was in Case B. Last, it listed the sentences for Case B under the case number for Case A and began each count with the letter "C," thereby suggesting they were in Case C. The abstract of judgment filed on November 22, 2017, contains a similar plethora of errors. We will not order the court to correct these orders in light of the resentencing we are requiring on remand. However, the court should be careful to prepare an accurate minute order and amended abstract of judgment upon remand to avoid any confusion going forward.

## DISPOSITION

The sentences imposed by the 2017 resentencing court for Allison's assault with a firearm convictions in counts 8 and 9 of Case B are vacated and this matter is remanded to the trial court to resentence Allison to concurrent convictions for these counts consistent with this opinion. The judgments appealed from are otherwise affirmed. After resentencing Allison, the court should prepare an amended abstract of judgment that accurately reflects all of Allison's sentences and provide a copy of this amended abstract of judgment to the CDCR.

 

                                   _____

                                   STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*People v. Allison* (A153527)

20

Trial Court:   Contra Costa County Superior Court


Trial Judge:   Hon. Garrett J. Grant


Counsel:


Patrick McKenna, under appointment by the Court of Appeal, for Defendant and Appellant.


Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit, Deputy Attorney General, Katie L. Stowe, Deputy Attorney General, for Plaintiff and Respondent.]