Filed 10/21/20  P. v. Alonzo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>GONZALO ALONZO,<br><br>  Defendant and Appellant. | B296059<br><br>(Los Angeles County<br>Super. Ct. No. BA321933) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Appeal dismissed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Gonzalo Alonzo appeals the trial court's order denying his request to modify his sentence by striking a Penal Code section 12022.53, subdivision (d),[1] firearm enhancement pursuant to Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620). Because Alonzo's judgment was final before passage of Senate Bill 620, the trial court lacked jurisdiction to entertain his motion, and its order is not appealable. Accordingly, we dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2007, in a gang-related incident, 17-year-old Alonzo fired multiple shots at a group of men standing in front of a house. One shot hit one of the men, who was treated at a hospital but survived. A jury convicted Alonzo of four counts of willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a)), four counts of assault with a firearm (§ 245), and one count of shooting at an inhabited dwelling (§ 246). It further found true street gang and firearm enhancements, including that Alonzo personally used a firearm and inflicted great bodily injury on the victim, and that a principal was armed. (§§ 186.22,

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     As the People request, we take judicial notice of the record in Los Angeles County Superior Court case No. BA321933, including our prior nonpublished opinions. (*People v. Alonzo* (Sep. 27, 2012, B217909); *People v. Alonzo* (Jan. 29, 2016, B248995); *People v. Alonzo* (Nov. 30, 2016, B248995; Evid. Code, §§ 452, subd. (d), 459.) Because the evidentiary details underlying Alonzo's offenses are not relevant to our disposition of his appeal, we only briefly summarize them here.

12022.5, 12022.7, 12022.53, subds. (c), (d), (e)(1).) The trial court sentenced Alonzo to 160 years to life in prison.

In an opinion issued on September 27, 2012 (*Alonzo I,* B217909), we affirmed Alonzo's convictions but concluded his sentence—which was the functional equivalent of life without the possibility of parole—amounted to cruel and unusual punishment, in light of *Roper v. Simmons* (2005) 543 U.S. 551, *Graham v. Florida* (2010) 560 U.S. 48, and *People v. Caballero* (2012) 55 Cal.4th 262. Accordingly, we vacated Alonzo's sentence and remanded for resentencing.

On remand, in April 2013, the trial court imposed a sentence of 40 years to life, comprised of 15 years to life on count 1, attempted murder, and a 25-years-to-life enhancement pursuant to section 12022.53, subdivision (d).[3]

Alonzo again appealed, contending the trial court abused its discretion by denying his request for a continuance of the sentencing hearing, his counsel provided ineffective assistance, and the new sentence amounted to cruel or unusual punishment. We rejected these contentions and affirmed the judgment in an opinion issued on January 29, 2016. (*Alonzo II*, B248995.)

Thereafter the California Supreme Court granted review in *Alonzo II*, with further action deferred pending its decision in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). On August 17, 2016, the court transferred *Alonzo II* back to us with directions to vacate our opinion and reconsider the cause in light of *Franklin*. In an opinion issued on November 30, 2016, we vacated our prior opinion and again affirmed Alonzo's convictions

---

[3]     The court imposed concurrent sentences on the other attempted murder charges. Sentence on the section 245 and 246 convictions was stayed pursuant to section 654.

and sentence.  (*Alonzo III*.)  We remanded to the trial court with directions to determine whether Alonzo was "given an adequate opportunity to make a sufficient record of his juvenile characteristics and circumstances at the time of his offense as set forth in *Franklin*.  If the trial court finds he was not, then both parties shall be given the opportunity to make such a record."  The remittitur issued on March 13, 2017.

In 2017, the Legislature enacted Senate Bill 620, which took effect on January 1, 2018.  (*People v. Harris* (2018) 22 Cal.App.5th 657, 660; *People v. Watts* (2018) 22 Cal.App.5th 102, 119.)  That legislation amended sections 12022.53, subdivision (h) and 12022.5, subdivision (c) to give trial courts authority to strike or dismiss firearm enhancements in the interest of justice. (Stats. 2017, ch. 682, §§ 1, 2.)  Prior to Senate Bill 620's enactment, imposition of these firearm enhancements was mandatory.  (*People v. Zamora* (2019) 35 Cal.App.5th 200, 206–207.)  As amended, section 12022.53, subdivision (h) provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."  Section 12022.5, subdivision (c) contains the same language.

Alonzo's *Franklin* hearing was continued several times, either at defense counsel's request or by stipulation of the parties, in part so that Alonzo could be evaluated by a mental health professional.  It eventually transpired on August 22, 2018.

On September 19, 2018, Alonzo filed a motion seeking dismissal of the section 12022.5 and 12022.53 firearm enhancements, pursuant to Senate Bill 620.  Attached as an

4

exhibit to the motion was a "Psychosocial Life History" prepared by a licensed clinical social worker. Defense counsel acknowledged that Alonzo's "case would not qualify as a case 'not yet final on appeal' under" *In re Estrada* (1965) 63 Cal.2d 740, 745. The People opposed the motion.

On February 22, 2019, the trial court denied the motion. It explained: "This is an unusual case. It arose . . . between *Caballero* and *Franklin*, and in the interim the court reduced the sentence from 160 to life to 40 to life. So he's already gotten a considerable break on the original sentence. [¶] But even beyond that, this is a case where he and a cohort went into rival territory, shot four or five times at people sitting on a porch, or steps. And I see nothing about the use of a gun that requires the court to use its discretion in favor of striking the allegation." The court confirmed it believed it had discretion to strike the enhancements, but explained, "I have to look at the big picture, and I don't see that striking the priors [*sic*] would do justice. I mean, because I ran the sentence concurrent after the *Caballero* reversal on this issue. [¶] So it seems to me I don't have much option as far as the sentence."

Alonzo appeals the court's order.

DISCUSSION

Alonzo contends the denial of his motion was an abuse of discretion because the trial court improperly focused on "irrelevant facts and inapplicable legal principles." He asserts that the fact his sentence was reduced after the initial remand— a modification required by the Eighth Amendment—was not a valid consideration; the denial could not be based on the fact of his gun use alone; the court failed to expressly consider the

5

psychosocial report; and it "did not think it could strike the gun use enhancements."

We sought additional briefing from the parties regarding whether the trial court had jurisdiction to consider the motion and whether the appeal should be dismissed. Alonzo filed a letter brief asserting that the court did have jurisdiction, and the order was appealable. The People declined to file a supplemental brief.

*The Appeal Must Be Dismissed*

Contrary to Alonzo's contention, the order in question is not appealable. "Generally, once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence." (*People v. Torres* (2020) 44 Cal.App.5th 1081, 1084; *People v. Karaman* (1992) 4 Cal.4th 335, 344; *People v. Hernandez* (2019) 34 Cal.App.5th 323, 326; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1204.) "If the trial court does not have jurisdiction to rule on a motion to vacate or modify a sentence, an order denying such a motion is nonappealable, and any appeal from such an order must be dismissed. [Citations.]" (*People v. Torres*, at p. 1084; *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 135 [dismissing appeal of order denying Senate Bill 620 relief where judgment was final]; *People v. Hernandez*, at p. 327 [same].)

Here, we affirmed Alonzo's judgment, including his sentence, in November 2016. The California Supreme Court denied Alonzo's petition for review on February 22, 2017. The remittitur issued on March 13, 2017. It does not appear that Alonzo filed a petition for writ of certiorari in the United States Supreme Court. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [judgment is final after time for petitioning for writ of certiorari in the United States Supreme Court has passed]; *People v.*

6

*Johnson* (2019) 32 Cal.App.5th 938, 942; U.S. Supreme Ct. Rules, rule 13 [petition for certiorari must be filed within 90 days after denial of discretionary review].) Senate Bill 620 did not take effect until January 1, 2018.

Thus, the judgment was final before Senate Bill 620's effective date. The trial court accordingly lacked jurisdiction to consider it. The order denying the motion is not appealable, and the appeal must be dismissed. (*People v. Fuimaono, supra*, 32 Cal.App.5th at p. 135; *People v. Hernandez, supra*, 34 Cal.App.5th at pp. 326–237; *People v. Johnson, supra*, 32 Cal.App.5th at p. 941.)

> a. *Senate Bill 620 changes, rather than clarifies, the law*

Alonzo makes a variety of arguments aimed at defeating this conclusion, but none is persuasive. First, he argues that Senate Bill 620 "does not implicate retrospective application of a new law," but "merely clarified discretion that had always been otherwise available." He is incorrect. "As a general rule, statutes do not operate retroactively 'unless the Legislature plainly intended them to do so.' [Citation.] Nonetheless, 'a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment.' [Citation.] Such a statute 'may be applied to transactions predating its enactment without being considered retroactive' because it 'is merely a statement of what the law has always been.' [Citation.]" (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183, fn. omitted; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.)

Senate Bill 620 did not merely clarify existing law; it changed it. Prior to Senate Bill 620's passage, imposition of

7

section 12022.53 and 12022.5 firearm enhancements was mandatory, and trial courts lacked discretion to strike them. (See *People v. Franklin*, *supra*, 63 Cal.4th at p. 273; *People v. Thomas* (1992) 4 Cal.4th 206, 213–214; *People v. Thompkins* (2020) 50 Cal.App.5th 365, 388; *People v. Arredondo* (2018) 21 Cal.App.5th 493, 506 (*Arredondo*) [under prior version of the law, "the trial court had no power to strike" firearm enhancement].) Former section 12022.5, subdivision (c) and former section 12022.53, subdivision (h) provided, "Notwithstanding Section 1385 or any other provisions of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." (See Stats. 2010, ch. 711, § 5; Stats. 2011, ch. 39, § 60.) The Legislative Counsel's Digest for Senate Bill 620 states: "*Existing law prohibits the court from striking an allegation or finding* that would make a crime punishable pursuant to these provisions. [¶] *This bill would delete the prohibition* on striking an allegation or finding and, instead, would allow a court, in the interest of justice and at the time of sentencing or resentencing, to strike or dismiss an enhancement otherwise required to be imposed by the above provisions of law." (Italics added.) It is patently clear that Senate Bill 620 did not simply clarify existing law, as Alonzo contends.

In any event, even if Alonzo were correct on this point, he does not explain how this would matter: the trial court would still have lacked jurisdiction to consider the motion because the judgment was final.

b. *Senate Bill 620 does not apply to final judgments*

Next, Alonzo contends that Senate Bill 620 "should be regarded as fully retroactive regardless of finality." He is again

8

incorrect. "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment *can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.*" (*In re Estrada*, *supra*, 63 Cal.2d at p. 745, italics added; see also *People v. Brown* (2012) 54 Cal.4th 314, 323 [court assumes Legislature intends ameliorative statutes to apply to "all defendants *whose judgments are not yet final on the statute's operative date,*" italics added]; *People v. Martinez* (2018) 4 Cal.5th 647, 655 [absent an express retroactivity provision or extrinsic sources showing intent that law apply retroactively, "ameliorative legislation does not affect convictions that have become final."].)

In accordance with these principles, the amendments made by Senate Bill 620 apply only to cases that were not final when the legislation took effect. Senate Bill 620 "does not automatically trigger resentencing for a prisoner who was previously found to have used a firearm in the commission of a felony. The Legislature has expressly limited the reach of newly enacted Penal Code section 12022.53, subdivision (h). A defendant serving a sentence pursuant to a 'final' judgment, who asks for such relief, should receive a 'summary denial.' " (*People v. Johnson*, *supra*, 32 Cal.App.5th at p. 940, fn. omitted [dismissing appeal from denial of resentencing request].)

9

Numerous courts have so held.  (See, e.g., *People v. Hargis* (2019) 33 Cal.App.5th 199, 209 ["Because defendant's judgment was final before the amendment went into effect, his case does not fall within *Estrada*'s qualification to the ordinary presumption that statutes operate prospectively."]; *People v. Hernandez*, *supra*, 34 Cal.App.5th at p. 326 [Senate Bill 620 "does not apply retroactivity to cases that became final"]; *People v. Fuimaono*, *supra*, 32 Cal.App.5th at p. 135 [Senate Bill 620 "does not contain language authorizing resentencing of convictions after they became final"]; *People v. Harris*, *supra*, 22 Cal.App.5th at p. 659.)  The Legislature could have, but did not, provide a specific procedure for reopening final cases for resentencing, as it or the electorate have done in regard to other ameliorative legislation.  (*People v. Harris*, at p. 662; see § 1170.126; § 1170.18; § 1170.95.)

*Arredondo*, *supra*, 21 Cal.App.5th 493, cited by Alonzo, does not hold a case's finality is "immaterial to jurisdiction," as he suggests.  In *Arredondo*, the court reversed a gang enhancement due to prosecutorial misconduct during argument, and remanded for further proceedings.  (*Id.* at pp. 496, 508–509.)  During the pendency of Arredondo's appeal, Senate Bill 620 took effect.  *Arredondo* observed that "a statute which lessens the penalty for a crime gives rise to an inference the Legislature intended the change to apply to all *nonfinal* cases."  (*Id.* at p. 507, italics added.)  Accordingly, *Arredondo* also reversed the firearm enhancement and directed the court, on remand, to exercise its sentencing discretion under the new law.  (*Id.* at p. 506.)

The court explained:  "section 12022.53, subdivision (h) states that '[t]he authority provided by this subdivision applies to any resentencing that may occur *pursuant to any other law*.'

(Italics added.)  By its express terms, this provision extends the benefits of Senate Bill 620 to defendants who have exhausted their rights to appeal and for whom a judgment of conviction has been entered but who have obtained collateral relief by way of a state or federal habeas corpus proceeding.  We interpret this extension of Senate Bill 620 as an expression by the Legislature of its understanding that it *would also be applied to all cases which were not final at the time it became effective.*  It is difficult to perceive a rationale for giving relief to a defendant whose judgment might be several years old but who was a successful habeas corpus litigant and provide no relief to a defendant whose conviction was entered in a trial court as recently as December 29, 2017.  [¶]  . . . [T]he Legislature, in enacting Senate Bill 620 has made it clear it intended and expected that its provisions *would be applied to all cases pending at the time it became effective* and thus it is outside the general rule" that statutes operate only prospectively.  (*Arredondo*, *supra*, 21 Cal.App.5th at p. 507, some italics added.)

Alonzo's appeal was not pending when Senate Bill 620 became effective, nor has he obtained relief in a habeas proceeding.  *Arredondo* does not support his argument.

### c. *Pendency of the* Franklin *hearing does not affect finality*

Next, Alonzo argues that the court had jurisdiction because his case was not final for "*Estrada* purposes."  He argues that the *Franklin* hearing, which he characterizes as a "sentencing proceeding," was pending when Senate Bill 620 became effective; and "[a]s long as the defendant is before the court 'pursuant to any other law' related to a sentencing proceeding, the court is authorized to exercise discretion to strike the enhancement."

11

That, however, is not what section 12022.53, subdivision (h) or section 12022.5, subdivision (c), states. The sentence Alonzo partially quotes reads in full: "The authority provided by this subdivision applies *to any resentencing that may occur* pursuant to any other law." (Italics added.) (See *People v. Hernandez*, *supra*, 34 Cal.App.5th at p. 326 [because defendant had not been resentenced pursuant to any other law, Senate Bill 620 was inapplicable].) A *Franklin* hearing is not a sentencing or resentencing proceeding. Instead, it simply provides "an opportunity for evidence preservation." (*In re Cook* (2019) 7 Cal.5th 439, 459.) The "purpose of the proceeding [is] to allow the offender to assemble evidence 'at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away.' " (*Ibid.*; *People v. Franklin*, *supra*, 63 Cal.4th at p. 284.) Significantly, a "*Franklin* hearing does not affect the judgment . . . ." (*People v. Hargis*, *supra*, 33 Cal.App.5th at p. 208.) "A *Franklin* proceeding is unrelated to the validity of the defendant's sentence. Neither the entitlement to a youth offender parole hearing, nor the evidence preservation process 'disturb[s] the finality of state convictions.' [Citation.]" (*In re Cook*, at p. 451.)[4]

---

[4]     Alonzo contends *In re Cook* misquoted *Montgomery v. Louisiana* (2016) __ U.S. __ [136 S.Ct. 718, 736], in that *Montgomery* did not rule on the finality of a judgment or the availability of postjudgment relief. This attempt to distinguish *Cook* is not persuasive. The *Cook* court expressly stated that a *Franklin* hearing does not impact a case's finality. That statement is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

*People v. McKenzie* (2020) 9 Cal.5th 40, does not support Alonzo's argument and, as he acknowledges, is not directly applicable. Alonzo's contention that "[f]inality for purposes of *Estrada* must be construed to permit as broad an application of the ameliorative amendment as is constitutionally possible" does not assist him. As set forth above, *Estrada* has already defined that constitutional limit: "The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage *provided the judgment convicting the defendant of the act is not final.*" (*In re Estrada, supra,* 63 Cal.2d at p. 745.)

## DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


DHANIDINA, J.