Filed 1/30/24  P. v. Ramos CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085929 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR-20-009347) |
| SALVADOR M. RAMOS, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Smith, J. and DeSantos, J.

# INTRODUCTION

In 2021, appellant and defendant Salvador M. Ramos (defendant) was convicted of two counts of premeditated attempted murder. In 2023, the trial court denied defendant's Penal Code[1] section 1172.6 petition for resentencing and found he failed to make a prima facie case for relief.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Defendant submitted three letter briefs. We review his arguments and affirm the trial court's denial of his petition.

# FACTS[2]

"Jasmine[3] and defendant had been in a dating relationship for approximately six years. They were still in a dating relationship at the time of the trial.

---

**1**    All further statutory citations are to the Penal Code.

**2**    After notice to the parties and without objection, this court took judicial notice of the record and nonpublished opinion in defendant's direct appeal in *People v. Ramos* (Mar. 6, 2023, F083827 (*Ramos*)). The following facts are taken from that opinion.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2002) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972.) We recite the factual statement from the prior appeal to place defendant's arguments in context, and will not rely on these facts to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

**3**    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

"On September 25, 2020, Jasmine, Anthony, and Lionel were in a white car shared by defendant and Jasmine. Defendant was not present. Anthony was driving, Jasmine was in the front passenger seat, and Lionel was in the back seat with Jasmine's dog.

"Jasmine spotted a small SUV driving towards them and told Anthony to 'step on it' if the SUV turned around. The SUV then made a U-turn, ran a stop sign, and began chasing the car, trying to ram it. Jasmine told Anthony, 'Don't let them hit the car.' Anthony began having difficulty driving the car as the SUV continued to pursue them. Everyone in the car was screaming and panicking. Jasmine said to Anthony, '[d]on't stop,' and '[s]tep on it.'

"Anthony pulled the car over when he could not drive forward anywhere. Jasmine said to Anthony, 'He doesn't fight; he stabs.' Anthony soon realized Jasmine was referring to defendant when he saw defendant[4] exit the passenger side of the SUV and approach the car.

"Anthony's driver's side window was open. When defendant reached it, he began stabbing Anthony in the face, hands, and arms through the open window. Defendant then opened the driver's side door and stabbed the knife 'all the way' into Anthony's leg. Anthony was screaming as defendant stabbed him. Blood was 'squirting everywhere,' and Anthony believed defendant was going to kill him.[5]

"Jasmine pulled Anthony out of the car through her passenger side door. Anthony testified that defendant looked at Jasmine after she pulled Anthony out of the car and told her, 'I'm going to kill you, bi***.'

---

[4] "While Jasmine maintained throughout defendant's trial that the perpetrator of the attack was not defendant and was another person with whom she had previously had a dating relationship, the jury found defendant guilty on all counts." (*Ramos*, *supra*, F083827).)

[5] "At some point after the car stopped, Lionel exited the car and ran away. Anthony stated that Lionel stated before he exited the car that he was afraid of defendant." (*Ramos*, *supra*, F083827).)

"Anthony stated defendant was 'standing up with the knife right there … next to the driver's side. And [defendant] acted like he was going to [walk] around the car towards [the passenger side] again. And then I acted like I[ was] going to jump into the driver's side, you know, just take off with the car. … And so I stopped [defendant]— that stopped [defendant] from coming around [to the passenger side of the car],' where Jasmine and Anthony were standing.

"Jasmine stated that defendant then got into the car and drove it toward Jasmine's dog standing nearby. She yelled and screamed at him to stop.

"Jasmine testified that defendant got out of the car and said to her, 'You cheating bi*** wh***,' and 'possibly' said 'I'm going to kill you too, bi***,' as he approached her, walking '[l]ike a force.… [¶] … [¶] Just steady and strong.'

"When asked whether she believed defendant's threats to kill her were in earnest, she answered, 'Well, he was trying to do so.… [¶] … [¶] [T]he facts being what they are, yes. It's not a belief. It just happened.'

"Jasmine stated that she froze as he approached because she was 'terrified of him.' Defendant then stabbed her twice in the temple.

"When asked if she was afraid as defendant approached, she stated, 'I stood still.… I just kind of stayed there. I don't know. I didn't move really. And I think I stood there until he drove off, too, for a little bit and then just walked off.' She stated that 'it was obvious' to her that defendant was going to hurt her. When asked if she said she was 'terrified' that defendant was going to hurt her, she stated, 'I'm not sure. I just froze. I couldn't move.'

"After defendant stabbed Jasmine, the other occupant of the SUV said to defendant, 'Let's go. Let's go.' Defendant then got into the Mercedes and drove away.

"Jasmine saw Anthony and told him he needed help, then began to walk away. When Anthony asked where she was going, she stated, 'I'm just going to go and get away before [defendant] comes back. He might shoot us.'

4.

"Anthony noticed Jasmine was bleeding from her face. She told him not to worry about her and screamed at him that he should be getting help for himself. She gave him her phone, but his hands were too injured for him to operate it. Eventually, some nearby residents called 911 and Stanislaus County Sheriff's deputies and an ambulance arrived.

"Anthony identified defendant as his attacker to the sheriff's deputies later that day. He was taken to the hospital, where he underwent surgery and received numerous stitches. As of trial, Anthony was in constant pain and movement in his hand and leg was permanently impaired.

"Sheriff's deputies found Jasmine approximately three blocks away. She identified defendant as the attacker. Jasmine initially refused treatment, but later went to a hospital and received 18 stitches for the wounds to her face.

"Forensic DNA analysis showed that defendant was a contributor to the swab taken from the knife handle, and Anthony was a contributor to the swab taken from the knife blade." (*Ramos*, *supra*, F083827.)

## PROCEDURAL BACKGROUND

On December 9, 2020, an information was filed in the Superior Court of Stanislaus County charging defendant with counts 1 and 2, premeditated attempted murders of, respectively, Anthony and Jasmine (§§ 664/187, subd. (a)); count 3, assault with a deadly weapon, a knife, on Anthony (§ 245, subd. (a)(1)); count 4, criminal threats to Jasmine (§ 422); count 5, battery on a spouse or cohabitant, Jasmine (§ 273.5, subd.(a)), with great bodily injury and weapon enhancements, and prior conviction allegations.

On June 23, 2021, after a jury trial, defendant was convicted of counts 1 and 2, premeditated attempted murder, with the enhancements for each count that he personally inflicted great bodily injury on the victims under circumstances involving domestic violence (§ 12022.7, subd. (e)) and personally used a deadly weapon, a knife (§ 12022, subd. (b)).

5.

Defendant was also convicted of count 3, assault with a deadly weapon, with the domestic violence great bodily injury enhancement; count 4, criminal threats, with the deadly weapon enhancement; and count 5, battery on a spouse or cohabitant, with domestic violence, great bodily injury and deadly weapon enhancements.

On January 18, 2022, the court sentenced defendant as to each of counts 1 and 2 to consecutive terms of life with the possibility of parole with the minimum parole eligibility period of seven years for premeditated attempted murder, plus consecutive terms of four years for the great bodily injury enhancement and one year for the deadly weapon enhancements, for an aggregate term of 10 years plus 14 years to life.

In 2023, this court affirmed the judgment against defendant in his direct appeal (*Ramos*, *supra*, F083827), and rejected his sole argument that his conviction for criminal threats was not supported by substantial evidence.

**DEFENDANT'S PETITION**

On October 13, 2022, while his direct appeal was pending, defendant filed a petition for resentencing in the trial court pursuant to section 1172.6 and requested appointment of counsel. He filed a supporting declaration that consisted of a preprinted form where he checked boxes that he was eligible for resentencing because he was convicted of murder, attempted murder, or manslaughter following a trial, and he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The court appointed counsel to represent defendant.

The People filed opposition and asserted the instructions showed the jury was not instructed on the natural and probable consequences doctrine or any theory of imputed malice, and defendant was convicted as the actual perpetrator of the attempted murders who acted with premeditation and intent to kill. Defendant's counsel filed a reply brief and argued the petition was facially valid and an evidentiary hearing should be held.

**The Trial Court's Order**

On February 23, 2023, the court held a hearing as to whether defendant's petition stated a prima facie case for resentencing. The court stated it had read the parties' briefs and invited arguments. The parties submitted the matter.

On the same day, the court filed an order that stated it had reviewed the record of conviction, "including but not limited to, the complaint, the reporter's transcript of the preliminary hearing, the information, the jury instructions, verdict forms and abstract of judgment." The court denied defendant's petition and found he was ineligible for resentencing as a matter of law because he "was prosecuted as a direct perpetrator and not on a theory of felony murder or a theory of natural and probable consequences."

Defendant filed a timely notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief included counsel's declaration that defendant was advised he could file his own brief with this court. This court also advised defendant that he could file a supplemental letter brief within 30 days or his appeal would be dismissed. In response to this court's order, defendant filed three letter briefs. We turn to his arguments.

**A. Defendant's Contentions About His Trial and Conviction**

In his letter briefs, defendant requests this court to "[l]ook [i]nto [m]y [c]ase" and remand the matter for an evidentiary hearing on the following alleged trial errors: that he is innocent of the charges, the police officers committed misconduct when the victims looked at photographic lineups, officers and witnesses committed perjury at his trial, the victims were unreliable and unable to positively identify him at trial, the district attorney committed misconduct, and ineffective assistance of counsel.

7.

These claims are solely related to defendant's jury trial and conviction, and are not cognizable in this appeal from the denial of his section 1172.6 petition for resentencing. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding. … The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

## B. Defendant's Contentions About the Denial of His Petition

Defendant asserts the trial court erroneously denied his petition, and the matter must be remanded for an evidentiary hearing, based upon the analysis in *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*).

First, when defendant filed his petition, the trial court complied with section 1172.6 and appointed counsel, ordered further briefing, conducted a hearing on the petition, and gave reasons for denying the petition.

Next, defendant was tried and convicted in 2021, sentenced in 2022, filed his direct appeal in 2022, and the judgment was affirmed in 2023. "Effective January 1, 2019, Senate Bill No. 1437 [(2017−2018 Reg. Sess.)] [(Senate Bill 1437)] … amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188,

8.

which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708.) "Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," codified in former section 1170.95. (*Strong*, at p. 708.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

There was a disagreement among appellate courts after Senate Bill 1437 went into effect as to whether the amendments enacted by sections 188 and 189 extended to both murder and attempted murder convictions based on the natural and probable consequences doctrine. The Supreme Court granted review in these cases, and they were pending before the court when the Legislature enacted Senate Bill No. 775 (2021−2022 Reg. Sess.) (Senate Bill 775) in October 2021. (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193 (*Sanchez*).) Senate Bill 775 became effective on January 1, 2022, amended former section 1170.95, and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) Thereafter, the Supreme Court transferred the pending cases about whether Senate Bill 1437's amendments extended to attempted murder convictions back to the appellate courts, in light of the amendments enacted by Senate Bill 775, without issuing an opinion on the disputed issue. (*Sanchez*, at p. 193.)

9.

Defendant was convicted in June 2021 of two counts of premeditated attempted murder. He was sentenced on January 18, 2022, shortly after Senate Bill 775's amendments became effective, without filing any postjudgment motions challenging his convictions or sentence under the clarifying provisions. He filed a notice of appeal and similarly failed to raise any issues regarding sections 188 and 189. (See, e.g., *People v. Reyes* (2023) 97 Cal.App.5th 292.)

In any event, in the order that denied defendant's petition for resentencing, the court stated it had reviewed the record of conviction, "including but not limited to, the complaint, the reporter's transcript of the preliminary hearing, the information, the jury instructions, verdict forms and abstract of judgment." To the extent the court may have relied on the preliminary hearing transcript to make the prima facie finding, any error was not prejudicial. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 972−974; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The jury instructions are part of the record of conviction and may be reviewed to make the prima facie determination. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1255; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.) The jury in this case was not instructed on principals, direct or indirect aiding and abetting, the felony-murder rule, the natural and probable consequences doctrine, conspiracy, or any theory of imputed malice.

Defendant's reliance on *Maldonado* is misplaced. In *Maldonado*, the defendant was convicted of first degree murder by means of lying in wait. The trial court denied his section 1172.6 petition for resentencing for failing to state a prima facie case for relief. *Maldonado* reversed and remanded for an evidentiary hearing and held that, based on the standard instructions given at trial on aiding and abetting (CALCRIM No. 401), implied malice (CALCRIM No. 520), and lying-in-wait murder (CALCRIM No. 521), the jury instructions were ambiguous and permitted a conviction of murder based on a theory of imputed malice. (*Maldonado*, *supra*, 87 Cal.App.5th at pp. 1264−1267.) *Maldonado*

10.

acknowledged "the jury was not *required* to construe the instructions in this manner," but concluded defendant was eligible for relief because the jury could reasonably have done so. (*Id.* at pp. 1266−1267, italics in original.)

*Maldonado* is not applicable to the instant case since the jury herein was not similarly instructed on implied or imputed malice, or lying in wait. Instead, the jury was instructed with CALCRIM No. 600, that the elements of attempted murder were that defendant took one direct but ineffective step toward killing another person, and defendant intended to kill that person, and CALCRIM No. 601, premeditation and deliberation defined for attempted murder. The trial court correctly denied defendant's petition because he "was prosecuted as a direct perpetrator and not on a theory of felony murder or a theory of natural and probable consequences."

## C. Defendant's Other Contentions

Finally, defendant asserts without analysis that he qualifies for resentencing under other statutory enactments: Assembly Bill No. 333 (2021−2022 Reg. Sess.), Senate Bill No. 1393 (2021−2022 Reg. Sess.), Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620), and Senate Bill No. 81 (2021–2022 Reg. Sess.).

The instant appeal does not involve petitions that were filed under these statutes, and they are inapplicable to his case. Assembly Bill No. 333 (2021−2022 Reg. Sess.) amended section 186.22 regarding the gang enhancement. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206−1207.) Senate Bill No. 1393 (2021−2022 Reg. Sess.) amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a court to strike or dismiss a section 667 prior serious felony conviction for sentencing purposes. (*People v. Zamora* (2019) 35 Cal.App.5th 200, 208; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971−972.) The jury did not make any findings and the court did not impose any terms for prior convictions or gang enhancements in this case.

Senate Bill 620 granted discretion to the trial court to strike section 12022.53 firearm enhancements in furtherance of justice pursuant to section 1385. (*People v.*

*Zamora*, *supra*, 35 Cal.App.5th 200, 208.)  Senate Bill No. 81 (2021−2022 Reg. Sess.) amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements in the interest of justice.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)  The amendments enacted by Senate Bill 620 do not apply retroactively to cases that have become final.  (*People v. Hernandez* (2019) 34 Cal.App.5th 323, 326−327.)  "[T]he authority to strike or dismiss a firearm enhancement applies only to nonfinal judgments or to final judgments where the defendant is being resentenced under some other law.  [Citation.]  [The d]efendant's case presents neither situation."  (*People v. Baltazar* (2020) 57 Cal.App.5th 334, 341.)  The trial court correctly found that defendant was ineligible for resentencing under section 1172.6, his sentence was not vacated, and the judgment remains final.

## DISPOSITION

The court's order of February 23, 2023, denying defendant's section 1172.6 petition for resentencing, is affirmed.